RECEIVED
IN LAKE CHARLES, LA.

AUG 09 2012

TONY R. MOORE, CLERK
BY _____
            DEPUTY

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **RONALD TIPETT** | : | **DOCKET NO. 2:10 CV 01164** |
| **VS.** | : | **JUDGE MINALDI** |
| **MICHAEL J. ASTRUE,** **COMMISSIONER OF SOCIAL** **SECURITY** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Presently before the court is Plaintiff's petition for review of the Commissioner's denial of social security disability benefits. This matter is before the court pursuant to §636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), this court finds that the Commissioner's decision is supported by substantial evidence in the record. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

### PROCEDURAL HISTORY

On September 27, 2006, the Plaintiff filed an application for disability insurance benefits, alleging disability beginning April 15, 2003. The claim was denied initially on November 28, 2006. Thereafter, the Plaintiff filed a timely written request for hearing on January 18, 2007. The Plaintiff appeared and testified at a hearing held on August 19, 2008 in Lake Charles, Louisiana before ALJ Gary Suttles.

On September 29, 2008, the ALJ issued an Unfavorable Decision finding the Plaintiff not disabled at step five of the sequential evaluation process. In his decision the ALJ determined, in

relevant part, that the Plaintiff had the following Residual Functional Capacity (RFC): Walk 4 of 8 hours with an option to sit or stand at will, can occasionally stoop, crouch, balance and twist, but is precluded from bending, squatting and crawling. (Tr. 72). Dissatisfied with this decision, the Plaintiff filed a Request for Review with the Appeals Counsel on November 6, 2008. On May 26, 2010 the Appeals Counsel denied Plaintiff's request. On July 20, 2010 the Plaintiff filed suit in this Court appealing the determinations of the Commissioner.

STANDARD OF REVIEW

This court reviews the Commissioner's denial of social security benefits only to ascertain (1) whether the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.[1] Substantial evidence is that which a reasonable mind might accept to support a conclusion.[2] "It is more than a mere scintilla and less than a preponderance."[3] When we apply the substantial evidence standard, "we scrutinize the record to determine whether such evidence is present. We may not reweigh the evidence, try the issues *de novo,* or substitute our judgment" for that of the Commissioner.[4]

In order to be eligible for disability benefits, the claimant must prove that he has a medically determinable physical or mental impairment, or combination of impairments, lasting at least twelve

---

[1] *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir.2000).

[2] *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

[3] *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir.1995) (internal quotation marks omitted).

[4] *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994) (citation omitted), *cert. denied,* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995); *see Newton,* 209 F.3d at 452.

months that prevents him from engaging in a substantial gainful activity.[5]   Substantial gainful activity is defined as work involving significant physical or mental abilities that is usually done for pay or profit.[6]

The ALJ engages in a five-step sequential evaluation process for determining whether an individual is disabled: (1) whether the claimant is presently engaging in substantial gainful activity; (2) whether the claimant has a medically determinable severe impairment, as defined by regulations; (3) whether the claimant's impairment or combination of impairments meets the criteria of an impairment listed in Appendix 1 of the regulations; (4) whether the impairment prevents the claimant from doing her past relevant work; and (5) whether the impairment prevents the claimant from doing any other work.[7]

Before considering the fourth and fifth steps, the Commissioner must determine the claimant's residual functional capacity (RFC).[8]   The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from his impairments. In determining the RFC, the Commissioner must consider all of a claimant's impairments, including those that are not severe.[9]

The claimant bears the burden of proof on the first four steps and then the burden shifts to the Commissioner for the fifth step. If the claimant shows he is no longer capable of performing his

---

[5]  42 U.S.C. § 423(d)(1)(A).

[6]  20 C.F.R. § 404.1572(a) and (b).

[7]  *Id.* § 404.1520(a).

[8]  *Id.* §404.1520(e).

[9]  *Id.* § 404.1545.

previous jobs, the Commissioner must show that the claimant is capable of engaging in some type of alternative work that exists in the national economy.[10]

### FACTS AND MEDICAL EVIDENCE

The Plaintiff, age 51 at the time of his hearing (Tr. 21), graduated from High School (Tr. 24) and has prior work experience as a Surveyor, Carpenter, Pipe Fitter, and Boiler Maker (Tr.47). The ALJ found that the Plaintiff had the following severe physical impairments: Degenerative Disc Disease, Degenerative Joint Disease, Hypertension, and Obesity (Tr. 69).

The Plaintiff submits that the medical evidence shows that the Plaintiff suffers with complications with his heart, neck and lower back pain, and knee pain. His heart problems were discovered after an echocardiogram was performed on June 17, 2002 at Dequincy Memorial Hospital. The results of the exam showed the left atrium size and left ventricular to be at the upper limits of normal (Tr. 168). There was mild concentric left ventricular hypertrophy present with a wall thickness of 1.2-1.3 (Tr. 168). There was mild concentric left ventricular hypertrophy (Tr. 168).

The Plaintiff has an injured lower back. On June 18, 2003, an MRI of the lumbar spine that was performed at Open Air MRI showed borderline central canal stenosis at L1-2 and L2-3 (Tr. 227). Mild disc bulging with superimposed subtle broad based left lateral disc protrusion at L4-5 was also seen (Tr. 227). His lower back problems at the L4-5 level were diagnosed on December 8, 2004, after an MRI of the lumbar spine was performed at Open Air MRI that showed a disc bulge with articular facet degeneration asymmetrical to the left at L4-5 that flattens the central and left aspect of the thecal sac and results in impingement on the left neural foramen (Tr. 230). The Plaintiff had similar problems at other parts of his lower back. For example, on April 16, 2005, an MRI of the

---

[10] *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir.1987)

lumbar spine performed at Open Air MRI showed minimal disc bulges with a reticular facet degeneration at L1-2 and L3-4 through L5-S1, appearing to result in minimal flattening of the ventral thecal sac with mild bilateral neural foramen (Tr. 232).

The Plaintiff has a cervical spine disorder. On June 18, 2003, an MRI of the Cervical Spine performed at Open Air MRI showed disc bulging or entophyte ridging at multiple levels with multi level neural canal narrowing (Tr. 225). There was also mild central canal narrowing at the C3-4 level secondary to disc bulging and leguminous and facet hypertrophy (Tr. 225). On June 17, 2004, at Lake Charles Memorial Hospital, an anterior cervical diskectomy at C3-4, C4-5, and C5-6 was performed (Tr. 285).

The Plaintiff has a bad right knee and on June 7, 2007, at Women & Children's Hospital, a right knee arthroscopy, partial medial meniscectomy, partial lateral meniscectomy, tricompartment chondroplasty, and removal of loose bodies was performed (Tr. 334).

Tippet also suffers with obesity and on November 11, 2006, he measured 5'11" tall and weighed 344 pounds (Tr. 302). This height and weight would compute to a BMI[11] of 48.0. According to SOC. SEC. R. 02-1p, an individual of 40 or greater is classified at Level III and is termed as "extreme" obesity. It further clarifies that this level of obesity represents "...the greatest risk for developing obesity-related impairments..." See SOC. SEC. R. 02-1p.

After considering the combined effect of his medical conditions, Dr. R. Dale Bernauer completed a certification of mobility impairment on March 21, 2003 stating that the Plaintiff was permanently impaired (Tr. 355). On May 12, 2005, Dr. Bernauer opined that the Plaintiff had chronic

---

[11] Body Mass Index (BMI). BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m2).

back pain and would permanently be unable to stoop, crawl, or climb (Tr. 279). On November 11, 2006, a Consultative Examination was performed by Dr. Vinh Nguyen wherein he likewise found the Plaintiff to be unable to bend, squat, crawl, or climb (Tr. 303).

## LAW AND ANALYSIS

The plaintiff argues that the Commissioner's decision is not supported by substantial evidence because:

1. The vocational expert testimony, upon which the ALJ's decision is based, is facially unreliable as the exertional demands required by the jobs identified by the VE exceed the limitations contained in the ALJ's hypothetical questions and RFC; and

2. The ALJ failed to elicit a reasonable explanation for the inconsistency between the VE testimony and the information contained in the DOT pursuant to Soc. Sec. R. 00-4p.

Joel Kintella, a vocational expert (VE), testified that the Plaintiff's prior relevant work consisted of work as a surveyor, supervisor, carpenter, pipe fitter, and a boiler maker (Tr. 46-47). Mr. Kintella stated that the exertional demands for these jobs are performed at the light, medium and heavy level and are considered to be skilled jobs. (Tr. 46-47).

The ALJ posed a hypothetical question to the VE, in relevant part, with the following limitations: an individual with the exertional ability to occasionally lift 20 pounds, 10 pounds frequently, walk four hours of an eight hour day and would have the option to sit or stand at will (Tr. 49). The ALJ further limited the individual to "no bending, squatting, crawling or climbing, occasional stoop, crouch, balance and twist" (Tr. 49). The VE testified that such limitations would preclude the Plaintiff's prior relevant work but that such an individual could do light work as a clerk, shipping order clerk, assembler, parking lot attendant, mail clerk, and a shipping and receiving weigher (Tr. 50, 51). The VE testified that the jobs he listed were all "DOT consistent" (Tr. 51).

The Dictionary of Occupational Titles (DOT), published by the United States Department of Labor, is a comprehensive listing of job titles in the United States. A vocational expert's testimony may give rise to a conflict in at least two different ways. First, the vocational expert may testify that a particular job requires a particular exertional or skill level, when the DOT expressly provides that the job requires a different exertional level. *See, e.g., Conn v. Secretary of Health & Human Servs.,* 51 F.3d 607, 610 (6th Cir.1995) (vocational expert testified that particular jobs required only a sedentary exertional level, while the DOT classified those same jobs as light or medium). With this most direct and obvious type of conflict, the ALJ is asked to accept the vocational expert's testimony, even though that testimony is in actual conflict with the provisions of the DOT, which is routinely relied upon by the responsible agency. A second, and different type of conflict may arise when the vocational expert's testimony places the ALJ's finding with respect to the claimant's residual functional capacity or the claimant's specific impairments in conflict with the exertional or skill level or the specific skills required for the identified jobs in the DOT. *See, e.g., Haddock v. Apfel,* 196 F.3d 1084, 1087-88 (10th Cir.1999) (vocational expert testified that claimant could perform three jobs classified by the DOT as requiring a light or heavy exertional level after the ALJ found that claimant had the residual functional capacity for only sedentary work); *Johnson v. Shalala,* 60 F.3d 1428 (9th Cir.1995) (vocational expert testified that claimant could perform a job classified by the DOT as light, notwithstanding the ALJ's determination that the claimant retained the residual functional capacity for only sedentary work). *Carey v. Apfel,* 230 F.3d 131, 144 ( 5th Cir. 2000).

The Plaintiff submits that, in the instant case, the ALJ relied upon VE's testimony in finding that the Plaintiff could perform jobs "existing in significant numbers" (Tr. 78). Based on this evidence, the ALJ found the Plaintiff not disabled under the framework of Medical – Vocational

Rules 202.22 and 202.15 (Tr. 78). According to the DOT, the Jobs listed by the VE are performed

at the light exertional level. Tippet argues that this creates a conflict because the ALJ limited the

Plaintiff to only four hours of standing (Tr. 49). An additional conflict exists because the ALJ limited

the Plaintiff to jobs that allow for a sit-stand option (Tr. 49). Each of these limitations are outside

of how the DOT would describe light work.The Code of Federal Regulations defines "light work"

as follows:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects
> weighing up to 10 pounds. Even though the weight lifted may be very little, a job is
> in this category when it requires a good deal of walking or standing, or when it
> involves sitting most of the time with some pushing and pulling of arm or leg
> controls. To be considered capable of performing a full or wide range of light work,
> the claimant must have the ability to do substantially all of these activities. 20 C.F.R.
> §§ 404.1567

Soc. Sec. R. 83-10 explains that light work entails "a good deal of walking or standing," which is

the "primary difference between sedentary and most light jobs." Soc. Sec. R. 83-10 explains that

light work entails frequent lifting or carrying objects. See *Id.* "Frequent" means "occurring from one-

third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to

two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a

total of approximately 6 hours of an 8-hour workday". Id.

Tippet asserts that the VE erroneously affirmed to the ALJ that his testimony was "DOT

consistent" when in reality a material conflict existed. The Plaintiff argues that the ALJ relied upon

the VE's inaccurate testimony and therefore failed to identify and resolve the existing conflicts. Thus

the ALJ failed to comply with the requirements of Social Security Rulings 00-4p and 83-10. Tippet

argues that this error materially prejudiced the Plaintiff's case. If the VE would have noted the

conflict, the ALJ would have followed the guidelines set forth under Soc. Sec. R. 96-8p and 83-10.

As such the Plaintiff would have been limited to a reduced range of sedentary work and, considering that the Plaintiff was over the age of 50, he would have been able to meet the requirements of grid rule 201.14, which mandates a finding of disability.

Additionally, Tipett asserts that the unresolved conflict deprives the Commissioner's Step Five decision of substantial evidence. At Step Five of the sequential analysis, the Commissioner has the burden of proving that the Plaintiff's residual functional capacity allows performance of alternative work that is available in significant numbers in the national economy. 20 C.F.R. §404.1520(a)(4)(iv)-(v) (2006). An inability to do so would result in a finding of disability. The Plaintiff argues that remand is appropriate to identify and resolve the unexplained discrepancy between the VE's testimony and information in the DOT. *See Carey v. Apfel*, 230 F.3d at 147.

The ALJ asked the vocational expert to assume a hypothetical individual matching Plaintiff's age, education, past work experience, and RFC (Tr. 49). The vocational expert named three semi-skilled and three unskilled jobs that the individual could perform (Tr. 51). Based on the vocational expert's testimony, the ALJ found that Plaintiff was not disabled (Tr. 77-79).

The Commissioner states that the Plaintiff mistakenly asserts that the ALJ limited him to four hours of *standing* while the ALJ actually limited Plaintiff to four hours of *walking* in an eight-hour workday. The Plaintiff's ability to walk for only four hours in an eight-hour workday would not, as Plaintiff claims, preclude all light work, for light work includes jobs that "require a good deal of walking or standing, or . . . involve sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. 404.1567(b). Thus, the Commissioner argues that some limitation in walking would not necessarily eliminate all light jobs, because jobs that involve mostly sitting can also fall into the light work category.

9

The Commissioner argues that the Plaintiff mistakenly asserts that he must be able to stand or walk for six hours of an eight-hour day in order to perform the jobs that the vocational expert named.  The Commissioner does not dispute that Social Security Ruling 83-10 states that the full range of light work requires "standing or walking, off and on, for a total of approximately six hours of an eight-hour workday." Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6; *see* Pl. Br. at 7.  The Commissioner asserts, however, that the ALJ in this case never found Plaintiff able to perform the "full range" of light work. Instead, the ALJ's RFC finding indicates that he found Plaintiff could perform a limited range of light work (Tr. 72). When the ALJ posed a hypothetical question to the vocational expert that exactly mirrored Plaintiff RFC (Tr. 49-50), the vocational expert responded that there were six available occupations, each existing in significant numbers in the national economy (Tr. 51).

Next, the Commissioner argues that there was no conflict between the vocational expert's testimony and information found in the *Dictionary of Occupational Titles*. U.S. Dep't. of Labor, *Dictionary of Occupational Titles* (4th ed. 1991) (*DOT*). The *DOT* definitions are generic job descriptions that offer the approximate *maximum* requirements for each position, rather than the range. *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000); *Fenton v. Apfel*, 149 F.3d 907, 911 (8th Cir. 1998). Thus, the Commissioner asserts that simply because the occupations that the vocational expert named were classified as light work, does not mean that all the jobs within the occupations would require an individual to stand/walk for six hours in an eight-hour workday. In the present case, the vocational expert understood the limitations in the ALJ's hypothetical question, asked for clarification as needed, and testified that the hypothetical individual could perform several occupations existing in significant numbers in the national economy (Tr. 49-52). The ALJ further

10

asked the vocational expert if his testimony was consistent with the *DOT*, and the vocational expert confirmed that it was (Tr. 51, 52). *See* SSR 00-4p, 2000 WL 1898704.

In his reply brief, Tippet argues that the distinction between standing and walking is merely semantic and the relevant point is that he cannot be on his feet for approximately 6 hours of an eight hour workday. While the Commissioner argues that a limitation of four hours of walking is consistent with light duty jobs because 20 C.F.R. 404.1567(b) explains that some light duty jobs do not require 6 hours of standing if they require "sitting most of the time with some pushing and pulling of arm or leg controls." *See* Df. Br. at 4. Tippet argues that this exception to the normal standing or walking requirements for light work is not applicable to the instant case because all of the jobs listed by the VE were void of any pushing and pulling of arm or leg controls (Tr. 46-47). The Plaintiff asserts that his point is that the VE failed to tell the ALJ that his testimony was inconsistent with the DOT. The Plaintiff asserts that he never disputed that, in response to a hypothetical question, the vocational expert responded that there were six available occupations. What is disputed is that the jobs listed are not consistent with the DOT as was testified by the VE.

However, the court finds that there is no direct conflict between the vocational expert's testimony and the DOT. *See Carey,* 230 F.3d at 145-46. When there is an implied or indirect conflict between the vocational expert's testimony and the DOT, "the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so." *Id.* at 146. Because there is no evidence in the record that undermines the vocational expert's testimony that Tippet could perform the requirements of each of the identified jobs despite his impairments, Tippet has not shown that the ALJ lacked substantial evidence to support the conclusion that he retained the residual functional capacity to return to work in the specified light exertional level jobs. *See*

11

*Carey,* 230 F.3d at 146-47; *Johnson,* 864 F.2d at 343.

Tippet next argues that the ALJ's Finding that the Plaintiff could perform "occasional stooping" is both unsupported by the evidence and internally inconsistent with the ALJ's own RFC.

Soc. Sec. R. 83-14 ruling defines stooping as "bending the body downward and forward by bending the spine at the waist". Soc. Sec. R. 83-14.   The Plaintiff testified that after his accident, he was unable to maintain employment because he was no longer able bend, climb, get down on his knees, or lift (Tr. 40). The Plaintiff's testimony is supported by the medical evidence. The Plaintiff's treating physician, Dr. Bernauer, stated that the Plaintiff was permanently unable to stoop, crawl, or climb (Tr. 279). Additionally, Dr. Vinh Nguyen performed an independent medical evaluation and diagnosed the Plaintiff with low back pain and stated that the Plaintiff should not bend, squat, crawl, or climb (Tr. 303). The ALJ stated in his RFC that the Plaintiff should not be required to bend, yet the ALJ states that the Plaintiff retained the ability to stoop on an occasional basis.

Soc. Sec. R. 83-10 indicates that light work requires stooping for at least one-third of the workday. Likewise, Soc. Sec. R. 83-14 states that, in order to perform substantially all of the exertional requirements of most light jobs, an individual would need to stoop occasionally (i.e. from very little up to one-third of the time). The Plaintiff argues that if the ALJ had found Tippett unable to bend, then he would not be able to perform light work and would be limited to sedentary work. If limited to sedentary work,  he would have been found disabled pursuant to the Grid rule 201.14.

The Commissioner argues that substantial evidence supports the ALJ's determination that Plaintiff could perform occasional stooping (Tr. 72). Although the Plaintiff claims that he could not

stoop at all[12], the ALJ noted that in the following month, June 2005, Dr. Bernauer reported that Plaintiff had no true herniation in his back and that surgery was not warranted (Tr. 282). Dr. Bernauer's treatment notes further show that in August 2005, the Plaintiff reported that he had gone back to work (Tr. 283). The Plaintiff said that he was walking three to four miles a day and had no pain in his legs (Tr. 283). Treatment notes show that Plaintiff reported aggravating his back and neck when he moved a wet mattress in November 2005 and lifted an air conditioner in August 2006 (Tr. 285, 298).

The Plaintiff refers to the report from consultative physician Vinh Nguyen, M.D., who examined Plaintiff in November 2006 (Tr. 301-04).  Dr. Nguyen stated that Plaintiff had problems bending and squatting, most likely due to his back and weight (Tr. 303). Dr. Nguyen also opined that Plaintiff should not bend, squat, crawl, or climb (Tr. 303). The ALJ acknowledged that Dr. Nguyen provided his opinion of Plaintiff's RFC, but, as within his discretion, the ALJ decided to give little weight to Dr. Nguyen's opinion. The ALJ found Dr. Nguyen's restrictive RFC opinion to be inconsistent with his examination findings.  Specifically, Dr. Nguyen's examination revealed no muscle asymmetry, atrophy, or involuntary movements; only slight tenderness in Plaintiff's lower back; good tone and muscle strength in all muscle groups; normal reflexes; and intact sensory functions (Tr. 302-03). In addition, lumbar xrays showed only mild degenerative joint disease in Plaintiff's lumbar spine (Tr. 303). After considering Dr. Nguyen's opinion with his examination findings, the ALJ ultimately determined that Dr. Nguyen's RFC opinion was not a accurate reflection of Plaintiff's functional ability (Tr. 76).

------------------------------------------------

[12]  Relying on a May 2005 letter from his treating physician, R. Dale Bernauer, M.D. (Tr. 279).

The ALJ must consider the six factors in subsection (d) with respect to the medical opinions of treating physicians. Subsection (d) is entitled "How we weigh medical opinions" and explicitly applies only to "medical opinions." Subsection (e) of the regulation expressly explains that some opinions by physicians are not medical opinions, and as such have no "special significance" in the ALJ's determination. 20 C.F.R. § 404.1527(e) & (e)(3). Among the opinions by treating doctors that have no special significance are determinations that an applicant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(e)(1). These determinations are legal conclusions that the regulation describes as "reserved to the Commissioner." The factors set out at subsection (d) apply only to medical opinions, not opinions "reserved to the Commissioner." The treating physician's, Dr. Bernauer's, opinion the Tippet was disabled was conclusory and the degree of restriction he gave to the Plaintiff was unsupported. Dr. Nguyen's examination findings fail to support the degree of restrictions he gave to the Plaintiff. Accordingly, the ALJ properly decided to give little weight to both opinions.

The record contains evidence to support the ALJ's determination that the Plaintiff could perform occasional stooping. In addition to finding a lack of support for the conclusions drawn by Doctors Bernauer and Nguyen, a State agency medical consultant, Gerald Dzurik, M.D., was asked to review the medical records and provide an opinion of Plaintiff's RFC (Tr. 306-13). Dr. Dzurik reviewed the medical evidence in November 2006, which included Dr. Nguyen's consultative report, and opined that the Plaintiff could perform activities consistent with a limited range of light work, including occasional stooping (Tr. 307-08). The Commissioner asserts that Dr. Dzurik's opinion concerning Plaintiff ability to stoop supports the ALJ's finding (Tr. 72).

The Government submits that, with respect to the particular occupations that the vocational expert identified was available, five of the six occupations require  no stooping, and one requires

14

only occasional stooping. *See DOT*, #221.387-026 (expediter clerk – no stooping); #219.367-030 (shipping-order clerk – no stooping); #369.687-010 (assembler – occasional stooping); #915.473-010 (parking lot attendant – no stooping); #209.687-026 (mail clerk – no stooping); #222.387-074 (shipping-and-receiving weigher – no stooping). The ALJ, therefore, properly concluded that Plaintiff, who could perform occasional stooping, was not disabled because he could perform the jobs that the vocational expert identified as available (Tr. 78-79).

Conclusion

Substantial evidence of record and relevant legal precedent support the ALJ's decision that the Plaintiff was not disabled from April 15, 2003, through September 29, 2008. Therefore, the ALJ's decision IS AFFIRMED.

Lake Charles, Louisiana, this ⟨28⟩ day of July, 2012.

PATRICIA MINALDI<br>UNITED STATES DISTRICT JUDGE